| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (For Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Harold B. Murphy, Chapter 11 Trustee of<br>New England Confectionery Company, Inc. | **DEFENDANTS**<br>Round Hill Investments LLC |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Charles R. Bennett 037380<br>Murphy & King, Professional Corporation<br>One Beacon Street<br>Boston, MA 02108<br>(617) 423-0400  Fax: (617) 423-0498 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>[ ] Debtor    [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor  [ ] Other<br>[X] Trustee | **PARTY** (Check One Box Only)<br>[ ] Debtor    [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor  [X] Other<br>[ ] Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
**Objection to claims, and action to avoid lien, to determine claims, and to subordinate portions of claims.**

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ ] 13-Recovery of money/property - §548 fraudulent transfer
[**1**] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
[**2**] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

[ ] Check if this case involves a substantive issue of state law      [ ] Check if this is asserted to be a class action under FRCP 23

[ ] Check if a jury trial is demanded in complaint      Demand $

Other Relief Sought:

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>New England Confectionery Company, Inc. | | | BANKRUPTCY CASE NO.<br>18-11217 |
| DISTRICT IN WHICH CASE IS PENDING<br>District of Massachusetts | | DIVISION OFFICE<br>Eastern | NAME OF JUDGE<br>Melvin S. Hoffman |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/ Charles R. Bennett*<br>Charles R. Bennett 037380 | | | |
| DATE<br>July 3, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Charles R. Bennett 037380 | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11217-MSH |
| **HAROLD B. MURPHY,<br>CHAPTER 11 TRUSTEE OF<br>NEW ENGLAND CONFECTIONERY COMPANY, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**ROUND HILL INVESTMENTS LLC,**<br><br>Defendant. | Adversary Proceeding<br>No. 18-_____ |

**TRUSTEE'S COMPLAINT FOR BREACH OF ASSET PURCAHSE AGREEMENT AND
FOR VIOLATION OF MASS. GEN. LAWS C. 93A, SEC. 11**

Harold B. Murphy, the Chapter 11 trustee (the "Trustee" or the "Chapter 11 Trustee") of New England Confectionery Company, Inc. ("NECCO" or the "Debtor"), brings this action for breach of contract and for unfair and deceptive business practices against Round Hill Investments LLC ("Round Hill"), the purchaser of certain assets of NECCO pursuant to an Asset Purchase Agreement approved by this Court on May 29, 2018.

Round Hill has breached by failing to pay $250,000 that was due on June 30, 2018 and by renouncing the remainder of its $1,000,000 post-closing payment obligation. As a pretext for its refusal to pay, Round Hill, in late June 2018, contrived a bad-faith, meritless allegation that

the Chapter 11 Trustee has breached representations and warranties regarding NECCO's compliance with federal regulations, specifically, regulations promulgated by the U.S. Food and Drug Administration ("FDA") that governed sanitation at NECCO's manufacturing facility.

Round Hill's contentions are knowingly false: prior to the auction of NECCO's assets in this Court, the Chapter 11 Trustee had provided Round Hill with: (1) a Warning Letter to NECCO from the FDA, by which the FDA informed NECCO that conditions at its manufacturing plant failed to conform to regulations including 21 CFR 117; and (2) the FDA's written report of investigation concerning the conditions at its plant. The Asset Purchase Agreement by which Round Hill purchased NECCO's assets specifically identifies these FDA documents, and Round Hill discussed them with NECCO management before formulating its bids at auction in this Court. With full knowledge of the FDA documents, Round Hill, at auction, bid over two million dollars *more* than it had bid prior to obtaining the FDA documents.

After confirming in open Court that it would be bound by its final bid at auction, Round Hill refused to close on the purchase of NECCO's assets. It had no justifiable reason for refusing to close. In the best interests of NECCO and its creditors, however, the Chapter 11 Trustee agreed to sell NECCO's assets to Round Hill for approximately $1,300,000 less that Round Hill had been bound to pay, and to make other voluntary accommodations, in order to close a sale. Having benefitted this much already, Round Hill now seeks to obtain, by knowingly false legal threats, a further discount of approximately $1,000,000. The captioned action is the Chapter 11 Trustee's response to Round Hill's cynical conduct.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the motion pursuant to 28 U.S.C. §157 and 1334. The motion is a core matter pursuant to 28 U.S.C. §157(b)(2)(A).

2

745278

2. Venue is proper in this District pursuant to 28 U.S.C. §1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code.

4. The Sale Order in the captioned Chapter 11 proceeding confers jurisdiction over the parties and claims in the captioned action.

## II.    PARTIES

5. Harold B. Murphy is the duly appointed chapter 11 for the bankruptcy estate of New England Confectionery Company, Inc., a Delaware corporation, the debtor in the captioned Chapter 11 proceeding.

6. Round Hill Investments LLC is a Delaware limited liability company.

## II.    BACKGROUND

7. On November 13, 2017, the Food and Drug Administration of the United States Department of Health and Human Services inspected NECCO's manufacturing facility at 135 American Legion Highway, Revere, Massachusetts (the "FDA Inspection").

8. On April 3, 2018 (the "Petition Date"), three of NECCO's creditors filed an involuntary petition for relief against NECCO under Chapter 7 of 11 U.S.C. §101, *et seq*. (the "Bankruptcy Code").

9. On April 17, 2018, NECCO filed a motion to convert its case to one under Chapter 11 of the Bankruptcy Code [docket no. 18] (the "Motion to Convert") and a motion (the "Sale Motion") to sell substantially all of its assets to the CI-N Acquisition, LLC (the "Stalking Horse Bidder")[1] for a purchase price of $13,296,900 and other consideration.

---

[1] The Sale Motion did not provide an opportunity for third parties to submit higher offers. A counteroffer procedure was established for the sale process after the Chapter 11 Trustee was appointed.

3

10. On April 19, 2018, the Motion to Convert was granted, and upon oral motion of the United States Trustee, the Court authorized the appointment of the Chapter 11 Trustee.

11. On or about May 2, 2018, the Chapter 11 Trustee filed a *Motion (A) to Approve Bidding Procedures, Notice Procedures, and Breakup Fee in Connection with Motion for Order Approving Private Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) to Authorize Trustee to Effectuate sale Pursuant to Terms of APA, as Amended, and (C) for Related Relief* in connection with the proposed sale to the Stalking Horse Bidder pursuant to the Sale Motion which was approved by order of even date [docket no. 131] (the "Sales Procedure Order").

12. Pursuant to the Sale Motion and Sales Procedure Order, bids for the entirety of the Purchased Assets (as defined an asset purchase agreement between the Chapter 11 Trustee and the Stalking Horse Bidder) were timely submitted by Spangler Candy Company ("Spangler"), Round Hill, and kgbdeals Shopping, Inc. ("KGB"). KGB subsequently declined to participate in further bidding.

13. On May 16, 2017, the FDA, through its Program Division Director Ronald M. Pace, sent a letter (the "Warning Letter") to Michael McGee, NECCO's Chief Executive Officer. The Warning Letter recited observations made during the FDA Inspection, including of apparent roof leaks, ventilation duct(s) in need of repair, and unclean equipment and utensils, among other alleged violations. The Warning Letter referred to and attached a completed FDA Form 483, the FDA's official report of its November-December 2017 inspection (the "FDA Inspection Report").

14. The FDA Inspection Report was comprised of seven pages of detailed observations by the FDA at NECCO's manufacturing facility. The Warning Letter

4

acknowledges that NECCO had responded to the FDA's concerns, including without limitation by disposing of thousands of pounds of potentially contaminated corn starch and instituting new procedures. As for the effectiveness of NECCO's efforts, the Warning Letter stated that, "[a]t this time, we [the FDA] cannot verify the adequacy of your corrective actions. We will evaluate your corrective actions during a future inspection."

15. In other words, the Warning Letter did not conclude that NECCO's remediation efforts were inadequate, but reserved judgment of their adequacy subject to future monitoring.

16. The FDA sent the Warning Letter and FDA Inspection Report to NECCO on May 16, 2018, by overnight courier service. NECCO received them on May 17, 2018.

17. On May 21, 2018, the Chapter 11 Trustee's counsel received the Warning Letter and FDA Inspection Report. On the same day, the Chapter 11 Trustee's counsel forwarded the Warning Letter the FDA Inspection Report by e-mail to counsel for Round Hill and the other bidders.

18. On May 22, 2018, Round Hill, Spangler, and the Stalking Horse Bidder discussed with NECCO management the Warning Letter and the FDA Inspection Report. In relevant part, the discussion concerned: (a) the FDA's observations made during its inspection of NECCO's manufacturing facility; and (b) the remedial measures that NECCO had taken and intended to take in response.

19. The press learned of the Warning Letter. Reports of the FDA's findings began to appear no later than May 22, 2018. Between May 22 and May 24, 2018, *The Boston Globe*, *USA Today*, Boston's television WBZ Channel 4, National Public Radio, *The Connecticut Post* (of Norwalk Connecticut) and *The Pittsburgh Post-Gazette*, among others, published news articles

5

or video broadcasts concerning the FDA's findings relating to alleged unsanitary conditions at NECCO's manufacturing facility.

20. Round Hill, Spangler, and the Stalking Horse Bidder had submitted written bids prior to auction. Round Hill's bid, on May 18, 2018, was $15,000,000 in cash, subject to the terms of a draft Asset Purchase Agreement and draft Transition Services Agreement to be executed in mutually agreeable form.

21. The draft Transition Services Agreement chiefly provided for the Seller (*i.e.*, the Chapter 11 Trustee) to supply employees to the Buyer (*i.e.*, the successful bidder) for a specified period of time and for the Buyer to reimburse the Seller for the wages and benefits of those employees. The purpose of the Transition Services Agreement was to allow the Buyer to begin producing inventory as soon as the sale closed.

22. On May 23, 2018, the Auction went forward before this Court as scheduled. Round Hill, Spangler, and the Stalking Horse Bidder all participated in the Auction with their respective counsel: (a) notwithstanding their possession and knowledge of the Warning Letter and the FDA Inspection Report; and (b) having spoken with NECCO management about the matters raised in the Warning Letter and about NECCO's past remediation efforts and intended future remediation efforts.

23. Bidding commenced at $15,250,000, an amount $250,000 greater than Round Hill's cash bid prior to the Auction. After Spangler bid $17,330,000, the Stalking Horse Bidder ceased bidding.

24. Spangler submitted the highest bid consisting of $17,830,000 to be paid in cash at closing plus $1,000,000, to be paid in four installments of $250,000 on or before the last days of June, July, August, and September 2018, respectively.

25. At the conclusion of the Auction, Round Hill was determined to be the second-highest bidder. Its bid consisted of $17,580,000 to be paid at in cash at closing, plus $1,000,000 to be paid in four installments of $250,000 each, on or before the last days of June, July, August, and September 2018, respectively.

26. At the direction of the Court, Round Hill agreed, in the event that the sale transaction between the Chapter 11 Trustee and Spangler did not close, to proceed with a purchase of the NECCO's assets for the amount of its last bid.

27. On May 24, 2018, the Chapter 11 Trustee attempted to close the sale transaction with Spangler in accordance with its high bid. Spangler refused, without good cause, to close.

28. Accordingly, the Chapter 11 Trustee immediately contacted Round Hill to close the transaction in accordance with its last bid. Despite its commitment in Court to that bid, Round Hill informed the Trustee that it would not close without a significant price reduction.

29. Round Hill did not have good grounds to refuse to close in accordance with its bid. Although the Chapter 11 Trustee could have sought specific performance, he believed that the delays and expenses associated such litigation would not be in the best interests of NECCO's business and creditors.

30. Therefore, on the afternoon of May 25, 2018, the Chapter 11 Trustee delivered a notice to both Spangler and Round Hill that that he would consider final and best bids, subject to specified conditions, received from either of them by 6:00 p.m. that day.

31. The Trustee's notice provided that upon acceptance of a final and best offer, the Chapter 11 Trustee would seek Court approval of such bid, without further bidding by any party, with a closing to occur one (1) business day following entry of an approved Sale Order.

32.    Round Hill timely delivered to the Chapter 11 Trustee an executed Asset Purchase Agreement ("Round Hill APA"), an executed Transition Services Agreement ("Round Hill TSA") and a Sale Order.

33.    In exchange for NECCO's "Purchased Assets," the Round Hill APA required Round Hill to pay the Chapter 11 Trustee $17,330,000, consisting of $16,330,000 in cash at closing and $250,000 to be paid on each of the following dates: June 30, 2018, July 31, 2018, August 31, 2018, and September 30, 2018.

34.    On the morning of May 26, 2018, the Chapter 11 Trustee executed and returned to Round Hill the Round Hill APA and the Round Hill Transition Services Agreement.  Closing was scheduled for May 31, 2018.

35.    Pursuant to the Round Hill APA, Round Hill agreed to purchase NECCO's assets "on an **'AS IS' 'WHERE IS'** basis, with no representations and warranties of any kind except as specifically provided for [in the Round Hill APA]."  (Boldface and capitalization in original).

36.    Article 2 of the Round Hill APA is entitled Representations and Warranties Concerning the Seller.  Among the Seller's representations and warranties are that the Chapter 11 Trustee does not know of any threatened suspension, revocation or invalidation of any permits required to carry on NECCO's business during the period of the Round Hill TSA, or of any basis for such suspension, revocation or invalidation, "<u>except for the alleged violations and remedial obligations</u> set forth in, collectively, (i) that certain letter dated May 16, 2018 from the United States Food and Drug Administration (FDA); and (ii) that certain FDA Form 483 issued as of December 22, 2017 by the Department of Health and Human Services of the FDA to NECCO."  (Underline added).

8

745278

37. Article 2 of the Round Hill APA also stated that **"The Purchaser acknowledges that, except as otherwise specifically provided for in this Agreement, the Purchased Assets are being sold to the Purchaser on an "AS IS" "WHERE IS" basis with no representations or warranties of any kind."** (Boldface and capitalization in original).

38. The Round Hill APA allowed Round Hill to assign its rights to "any assignee or nominee…so long as the Purchaser [Round Hill] remains obligated for the performance of its obligations hereunder…." Round Hill would eventually assign its rights under the APA and the TSA to the Sweethearts Candy Company ("Sweethearts").

39. In light of the foregoing, by May 26, 2018, Round Hill had succeeded in reducing its purchase price for NECCO's assets, since the Auction, by approximately $1.3 million.

40. Between May 26 and May 28, 2018, Round Hill met several more times with NECCO. In at least one of these meetings, Round Hill: (1) instructed NECCO management to take any actions necessary to address any issue that the FDA had raised; and (2) authorized the closing of NECCO's manufacturing facility for cleaning and remediation.

41. On May 29, 2018, and in furtherance of Round Hill's instruction, NECCO management temporarily closed NECCO's manufacturing facility for cleaning and remediation. The manufacturing facility would re-open on June 7, 2018.

42. On May 31, 2018, the Chapter 11 Trustee conveyed NECCO's assets to Round Hill in accordance with the Round Hill APA, and Round Hill made its scheduled payment of $16,330,000.

43. Upon conveyance of the assets, Round Hill or its assignee Sweethearts was to assume responsibility for operation of the business pursuant to the Round Hill TSA. Round Hill and Sweethearts neglected to open an operating account, however, and were unable (among

9

745278

other things) to purchase raw material necessary for the operation of the business. The lack of such materials impaired Sweethearts' production activities.

44. As a result, Round Hill or Sweethearts requested, as an accommodation outside the scope of the Round Hill APA, that the Chapter 11 Trustee make disbursements to Sweethearts' vendors and suppliers, through the Chapter 11 Trustee's accounts, from amounts that Round Hill or Sweethearts would advance to the Trustee for disbursement.

45. The Chapter 11 Trustee agreed to make such disbursements, but Sweethearts did not advance funds for disbursement until June 8, 2018. Upon receipt of such funds, the Chapter 11 Trustee promptly made the disbursements as requested.

46. Neither Round Hill nor Sweethearts opened an operating account to make operations-related disbursements until June 14, 2018.

47. On June 22, 2018, Round Hill (through its counsel) e-mailed the Chapter 11 Trustee, informing him of several purported "critical and unexpected matters that have had a significant impact on [Round Hill's] ability to revive Necco and try to turn this struggling business around." The e-mail first identified certain issues raised by the FDA Warning Letter. (This e-mail is herein referred to as "Round Hill's June 22 e-mail.")

48. Ignoring that it had had the Warning Letter and the FDA Inspection Report in hand for two days by the time of the Auction, Round Hill wrote "This matter had been identified by the FDA months before our closing, and we had the understanding that it had been addressed by the company in its normal course of responding to such serious government agency notices."

49. Round Hill knew, before the Auction, before it made its final bid on May 25, 2018, and before it wrote to the Trustee on June 22, 2018, that the FDA matter had never been resolved. The Warning Letter, which Round Hill had had since May 21, 2018, stated that "we

[FDA] cannot verify the adequacy of your [NECCO's] corrective actions.  We will evaluate your actions during a future inspection."

50. In other words, NECCO's "sanitation problem and non-compliance with 21 CFR 117" were still expressly unresolved.  Round Hill knew this on June 22, 2018, when it represented to "understanding that it had been addressed by the company" in the normal course.

51. Round Hill's June 22 e-mail continued, "In a letter dated May 21, 2018, you indicated that the remedial measures taken in response to FDA's findings satisfactorily addressed the FDA's concerns."

52. That statement was knowingly false.  The Chapter 11 Trustee's letter of May 21, 2018, to which Round Hill's e-mail referred, had identified specific measures that NECCO had implemented to address the FDA's concerns and stated that "The Debtor will, together with its third-party service providers, re-audit all [procedures]."  The letter went on to say that the Debtor would make its "formal response" to the FDA by June 6, 2018, and that "the Debtor's management is confident that their remedial measures and the formal response will satisfactorily address all of the FDA's concerns."

53. As Round Hill knew on June 22, 2018, it would have been impossible for the Chapter 11 Trustee to represent, on May 21, 2018, "that NECCO's remedial measures…satisfactorily addressed the FDA's concerns" because NECCO management *had not completed* its remedial measures and had not yet formally responded to the FDA.  The FDA could not have been satisfied with a response that NECCO had not completed or communicated.  Round Hill knew that its allegation, quoted in paragraph 50 above, was false.

54. Round Hill's June 22 e-mail continued:

> Upon funding our transaction on May 29th we were confronted with widespread, and national, negative press coverage (attached). We were immediately alerted by

11

> several investors, consumers, and associates of the terrible accusations reported regarding Necco's gross negligence with their facilities and operations, and possibly of its product contamination (references were made to ripped sugar, and other bags of ingredients). The news coverage was stunning and unprecedented, and totally disrupted our financing commitments and plans for rebuilding a Necco platform.

55. This portion of Round Hill's June 22 e-mail is replete with knowingly false statements. First, the "widespread, and national, negative press coverage," of the FDA's findings began no later than May 22, 2018. Round Hill knew of the press reports well before it funded the transaction.

56. Second, Round Hill was not first alerted, after funding on May 29, 2018, to the FDA's "terrible accusations." It was alerted to the FDA's findings *by the Chapter 11 Trustee* no later than May 21, 2018, that is, two days before the Auction and four days before Round Hill delivered the signed Round Hill APA, and over a month before Round Hill's June 22 e-mail.

57. Third, Round Hill's "plans for rebuilding a Necco platform" were disrupted in significant part by Round Hill itself. After closing, Round Hill was unprepared to begin operating NECCO's business and to complete performance on the Round Hill APA and the Round Hill TSA.

58. Round Hill's June 22 e-mail falsely stated that Round Hill was "shocked to learn that, unbeknown to it, the Necco plant had been shut down two days prior to its funding to address the [issues in the FDA Warning Letter]." Round Hill knew of the shut down because it had authorized and directed the shutdown.

59. Round Hill concluded its June 22, e-mail by stating that "closing down for unplanned days will cost Newco what we now estimate as $661,135.00…in costs and expenses to cure the FDA issues, to dispose of contaminated products, and now to extend our production schedule until mid-December."

12

60. Setting aside the inaccuracy of Round Hill's estimate, Round Hill knew on June 22, 2018 that its attribution of its estimated costs to the "unplanned" shutdown was false.

61. On June 27, 2018, counsel for Round Hill wrote to the Chapter 11 Trustee and to NECCO with a "notice of Purchaser's claims under the May 25, 2016, Asset Purchase Agreement ("Round Hill's June 27 letter").

62. Round Hill's June 27 letter maintained in substance that the Chapter 11 Trustee had breached representations and warranties contained in the Round Hill APA by failing to disclose the Warning Letter and the FDA Investigation Report.

63. This contention was knowingly false. Section 2.7 of the Round Hill APA, contained in the section setting forth the Seller's representations and warranties, acknowledges:

> …the alleged violations and remedial obligations set forth in, collectively, (i) that certain letter dated May 16, 2018 from the United States Food and Drug Administration (FDA); and (ii) that certain FDA Form 483 issued as of December 22, 2017 by the Department of Health and Human Services of the FDA to NECCO.

64. Round Hill's June 27 letter stated that, "As a result of these breaches and violations, the Purchaser [Round Hill] has incurred expenses in the amount of $601,135" which Round Hill now estimated to exceed $1,000,000.

65. Round Hill's June 27 letter then "demand[ed] payment within seven days of any amount not set off pursuant to the APA."

66. Round Hill's first post-closing payment of $250,000 was due on June 30, 2018. Round Hill has not paid that amount or any portion of it to the Chapter 11 Trustee.

67. On July 2, 2018, counsel for Round Hill again wrote to the Chapter 11 Trustee and to NECCO ("Round Hill's July 2 letter").

13

68.     Round Hill's July 2 letter purported to inform the Chapter 11 Trustee that the Trustee's breaches, as alleged in Round Hill's June 27 letter have, "excuse[d] further performance by the Purchaser [Round Hill], including but not limited to any obligation of the Purchaser to pay any of the four remaining installment payments under the APA." Those four payments, in total, are $1,000,000, an amount approximately equal to the damages that that Round Hill estimates to have incurred as a result of the Chapter 11 Trustee's alleged breach of warranty.

69.     The contentions of Round Hill's June 22 e-mail, Round Hill's June 27 letter, and Round Hill's July 2 letter were knowingly false when made. Round Hill made them as a knowingly false and pretextual basis for refusing to make post-closing payments required by the Round Hill APA.

## COUNTS

### Count 1
### (Breach of Contract)

70.     The Chapter 11 Trustee repeats the foregoing allegations though expressly set forth herein.

71.     Round Hill's conduct constitutes a breach of the Round Hill APA and the Round Hill TSA.

72.     The Chapter 11 Trustee has suffered damages as a result of Round Hill's breach, including without limitation the $250,000 post-closing payment that was due to Chapter 11 Trustee on June 30, 2018, and the remainder of the post-closing payments, which Round Hill has falsely maintained are subject to set off.

745278

## Count 2
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

73. The Chapter 11 Trustee repeats the foregoing allegations though expressly set forth herein.

74. Round Hill's conduct constitutes a breach of the Implied Covenant of Good Faith and Fair Dealing Contained in the Round Hill APA and the Round Hill TSA.

75. The Chapter 11 Trustee has suffered damages as a result of Round Hill's breach of said covenant of good faith and fair dealing, including without limitation the $250,000 post-closing payment that was due to Chapter 11 Trustee on June 30, 2018, and the remainder of the post-closing payments, which Round Hill has falsely maintained are subject to set off.

## Count 3
### (Violation of G.L. c. 93A, §§2, 11)

76. The Chapter 11 Trustee repeats the foregoing allegations though expressly set forth herein.

77. At all times relevant hereto, Round Hill engaged in trade or commerce within the meaning of G.L. c. 93A, §11. Round Hill's acts described in the foregoing paragraphs were taken willfully, recklessly or intentionally and constitute unfair and deceptive acts within the meaning of G.L. c. 93A, §2.

78. The acts complained of herein occurred primarily and substantially within the Commonwealth of Massachusetts.

79. As a result of Round Hill's unfair and deceptive acts, the Chapter 11 Trustee has suffered damages in an amount to be determined at trial, including without limitation multiple damages and attorneys' fees and costs

745278

**WHEREFORE**, the Chapter 11 Trustee respectfully requests that this Court issue an Order that judgment in the captioned action enter:

(a) Awarding the Chapter 11 Trustee all unpaid amounts under the Round Hill APA and/or the Round Hill TSA;

(b) Awarding the Chapter 11 Trustee multiple damages; and

(c) Awarding the Chapter 11 Trustee all reasonable attorneys' fees and costs incurred in connection with the captioned action; and

(d) Awarding all other relief that this Court deems just and proper.

Respectfully submitted,

HAROLD B. MURPHY,
CHAPTER 11 TRUSTEE

By his counsel,

*/s/ Charles R. Bennett*
Charles R. Bennett (BBO #037380)
Daniel J. Dwyer (BBO #567026)
Christopher M. Condon (BBO #652430)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts 02108
Tel: (617) 423 0400

Dated: July 3, 2018            Email: cbennett@murphyking.com

16

745278