## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>           **Debtor.** | **Chapter 11**<br><br>**Case No. 18-11217-MSH** |
| **HAROLD B. MURPHY,<br>CHAPTER 11 TRUSTEE OF<br>NEW ENGLAND CONFECTIONERY<br>COMPANY, INC.,**<br><br>           **Plaintiff,**<br><br>**v.**<br><br>**ROUND HILL INVESTMENTS LLC,**<br><br>           **Defendant.** | **Adversary Proceeding<br>No. 18-01091-MSH** |

## ANSWER AND COUNTERCLAIM OF
## DEFENDANT ROUND HILL INVESTMENTS LLC

In his Complaint, the Plaintiff Harold B. Murphy, Chapter 11 Trustee of New England

Confectionary Company, Inc. ("Plaintiff" or "Murphy"), included an "introduction" that is

conclusory, self-serving and completely without any merit.   Defendant Round Hill Investments

LLC ("Defendant" or "Round Hill") specifically denies each and all of the allegations of

Plaintiff's introduction and denies generally each of the claims asserted by Murphy in his

Complaint.   Round Hill hereby submits its Answer and Affirmative Defenses to Plaintiff's

Complaint and asserts below multiple counterclaims against Murphy for his and his agents'

wrongful conduct, including, *inter alia*, Plaintiff's breach of the Asset Purchase Agreement (the

"APA"), the Transition Services Agreement (the "TSA"), and this Court's Sale Order (the "Sale

Order"), misrepresentations to Round Hill concerning the true state of the Debtor's affairs to induce Round Hill to buy the Debtor's assets, and unfair and deceptive acts and practices. Had Round Hill known the truth, it would never have entered into these transactions in the first place, let alone at the agreed price. And as a result, Round Hill has suffered at least $2 million in damages.

Specifically, Murphy, and/or those acting as his agents (including the Debtor's insiders who received lucrative bonuses on the closing of the sale), induced Round Hill into bidding on the assets and in entering into the agreements based upon false representations that the FDA issues under the control of Murphy and his agents had been cured. Murphy also misrepresented that he had insurance in place for the facility, with Round Hill and its affiliate Sweethearts added as additional insureds, as required under the terms of the TSA, and he presented Round Hill with a false and unauthorized insurance document at the closing to induce Round Hill and Sweethearts to consummate the transaction. Without these false representations, Round Hill and Sweethearts would not have consummated the transaction.

Following the closing, Murphy and his agents continued to violate other obligations under the TSA and the Sale Order. Murphy, and not Round Hill, was obligated to take steps to cause the facility to comply with all FDA requirements, which he did not do. As a consequence of Murphy's breaches, Round Hill terminated the TSA, leaving the Plaintiff with no choice but to close the facility and discharge his employees. Moreover, under the terms of the TSA, Murphy is obligated to indemnify Round Hill and Sweethearts for any and all costs they incur arising out of Murphy's actions, or failures to act, as the employer under the TSA. Murphy ignored his obligations under the TSA, leading to Round Hill and Sweethearts being improperly named as an employer in a WARN lawsuit when it is Murphy, not Round Hill, who is the proper

2

party defendant in such action.  Round Hill hereby seeks to hold Murphy to his promises that he

has ignored to the detriment of Round Hill.

For the reasons that follow, Murphy's claims against Round Hill are denied.

1. Paragraph 1 of the Complaint makes allegations of law as to which no answer is

required.

2. Paragraph 2 of the Complaint makes allegations of law as to which no answer is

required.

3. Paragraph 3 of the Complaint makes allegations of law as to which no answer is

required.

4. Round Hill acknowledges the Sale Order, which speaks for itself.

5. Round Hill admits that Murphy is the Chapter 11 Trustee for the Debtor.

6. Admitted.

7. Round Hill was not personally involved in any dealings with or regarding the

Debtor on November 13, 2017, and thus cannot answer on its own knowledge.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted that Round Hill timely submitted its bid on or about May 18, 2018 and,

on information and belief, there were two other qualified bidders, namely Spangler and KGB.

13. Although Round Hill has no personal knowledge of the allegations in Paragraph

13 of the Complaint, Round Hill admits that on about May 21, 2018, the Plaintiff informed

Round Hill of the FDA report and the FDA letter (the "FDA Issues"), which were submitted to

Round Hill and all other bidders by Murphy, together with Murphy's May 21, 2018 letter representing to Round Hill that "The Debtor's management is confident that their remedial measures and the formal response will satisfactorily addresses all of the FDA's written concerns." To the extent that Paragraph 13 contains further allegations of fact, Round Hill denies all such allegations, conclusions and characterizations.

14.    The FDA report speaks for itself.  The FDA letter and the representations in Plaintiff's May 21, 2018 letter also speak for themselves.  No further answer is required.

15.    The allegations in Paragraph 15 are argumentative and no answer is required.  To the extent that an answer is required, the allegations are denied.

16.    Round Hill lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16, and calls upon Plaintiff to prove same.

17.    Round Hill is without sufficient knowledge or information to form a belief as to when the Plaintiff's counsel received the May 16, 2018 FDA letter.  Round Hill admits that by letter dated May 21, 2018, the Plaintiff provided Round Hill and all other bidders with a copy of the FDA letter and the FDA report.

18.    Round Hill acknowledges that on or about May 22, 2018, it discussed the FDA Issues with the Debtor's management and the Plaintiff, at which time the Debtor's management, as Plaintiff's agent, represented to Round Hill (and the other bidders), that the FDA Issues had been resolved and cured.  Round Hill otherwise denies the allegations in paragraph 21.

19.    Round Hill admits that certain articles were published in the press regarding the FDA Issues, but does not have sufficient knowledge or information to know how or when the press "learned" of these items.

20.    Admitted.

21.     Round Hill admits the TSA, entered into by Plaintiff and Round Hill, and approved by the Court in the Sale Order, which agreement speaks for itself.

22.     Round Hill admits that the auction occurred on May 23, 2018.  Round Hill states the transcript of the auction speaks for itself.  The allegations are otherwise denied.

23.     Round Hill refers the parties to the transcript of the May 23, 2018 auction sale hearing, which speaks for itself.  The allegations are otherwise denied.

24.     Round Hill refers the parties to the transcript of the May 23, 2018 auction sale hearing, which speaks for itself.  The allegations are otherwise denied

25.     Round Hill refers the parties to the transcript of the May 23, 2018 auction sale hearing, which speaks for itself.  The allegations are otherwise denied.

26.     Round Hill refers the parties to the transcript of the May 23, 2018 auction sale hearing, which speaks for itself.  The allegations are otherwise denied.

27.     Round Hill admits that on or aafter May 24, 2018, the Plaintiff informed Round Hill that Spangler had withdrawn from the transaction.  Round Hill is without sufficient knowledge or information to form a belief as to the truth of the allegation of the Plaintiff that Spangler refused "without good cause" to close.

28.     Round Hill admits that the Plaintiff contacted Round Hill on or after May 24, 2018, and denies the remaining allegations contained in Paragraph 28.

29.     Round Hill admits that the Plaintiff contacted Round Hill on May 24, 2018, and informed Round Hill that Spangler had declined to complete its purchase of the Debtor's assets, and denies the remaining allegations contained in Paragraph 29.

30.    Round Hill acknowledges that on May 25, 2018, Murphy requested new bids, to be presented to Murphy by 6:00 p.m. May 25, 2018, and denies the remaining allegations contained in Paragraph 30.

31.    The Plaintiff's "notice" speaks for itself.  No further answer is required.

32.    Admitted.

33.    The APA between Murphy and Round Hill speaks for itself, and all allegations which are inconsistent with the APA are denied.

34.    Round Hill admits that on or about May 26, 2018, Plaintiff signed the APA with Round Hill; admits that Plaintiff signed the TSA with Round Hill; and admits that the closing occurred on May 31, 2018.  The allegations are otherwise denied.

35.    The APA speaks for itself and Round Hill denies all allegations that are inconsistent with the APA.

36.    The APA speaks for itself and Round Hill denies all allegations that are inconsistent with the APA.

37.    The APA speaks for itself, and Round Hill denies any and all allegations, characterizations and conclusions that are inconsistent with the APA.

38.    Round Hill admits that it assigned to its affiliate, Sweethearts Candy Company LLC ("Sweethearts"), its rights under the TSA, and that Sweethearts assumed all of Round Hill's obligations under the APA and the TSA, but denies that the assignment was under Section 8.5(a) of the APA as alleged by Plaintiff, whereas the assignment was under Section 8.5(b) thereby discharging Round Hill from any and all obligations to Plaintiff under the APA and the TSA.

39.    The allegations contained in Paragraph 39 are argumentative and conclusory.  To the extent required, Round Hill denies the allegations in Paragraph 39.

40.    Round Hill acknowledges that Plaintiff and his agents, including the Debtor's insider management retained by Plaintiff, were obligated to take all steps needed to cure the FDA Issues and acknowledges that the facility was closed.  All other allegations are denied.

41.    Round Hill acknowledges that Plaintiff and his insider management team closed the facility on or about May 29, 2018, for a period of time to allow Plaintiff to further remediate the condition of the Debtor's facility, as required by the APA, TSA and Sale Order.  To the extent Paragraph 41 contains other allegations or conclusions, Round Hill denies same.

42.    Round Hill admits that on May 31, 2018, Plaintiff conveyed NECCO's assets to Sweethearts and that Sweethearts made the initial payment of $16,330,000.00 in accordance with the APA.  All other allegations are denied.

43.    Admitted that Sweethearts assumed Round Hill's obligations under the APA and the TSA.  Otherwise denied.

44.    Denied except to the extent otherwise admitted herein.

45.    Denied except to the extent otherwise admitted herein.

46.    Denied except to the extent otherwise admitted herein.

47.    The e-mails between counsel speak for themselves.  All privileges are expressly reserved and all further allegations are denied.

48.    The e-mails between counsel speak for themselves.  All privileges are expressly reserved and all further allegations are denied.

49.    Round Hill admits that it received the Plaintiff's May 21, 2018 letter and enclosures, which documents speak for themselves.  Round Hill denies the remaining allegations contained in Paragraph 49.

50.     The allegations in paragraph 50 are confusing and unintelligible such that no answer is required.  To the extent an answer is required, the allegations are denied.

51.     The e-mails between counsel speak for themselves.  All privileges are expressly reserved and all further allegations are denied.

52.     The allegation in the first sentence of paragraph 52 is denied.  The May 21, 2018 letter speaks for itself and all allegations, characterizations and conclusions in paragraph 52 that are inconsistent with the May 21, 2018 letter are denied.

53.     Denied.  Further answering, the e-mails speak for themselves.  All privileges are expressly reserved.

54.     The e-mails between counsel speak for themselves.  All privileges are expressly reserved and all other allegations are denied.

55.     The e-mails between counsel speak for themselves.  All privileges are expressly reserved and all other allegations are denied.

56.     Round Hill acknowledges that it was informed on May 21, 2018 of the FDA letter and the FDA report, but otherwise denies the allegations, characterizations and conclusions contained in Paragraph 56 of the Complaint.

57.     Denied.

58.     Denied.

59.     The e-mails speak for themselves.  All privileges are expressly reserved and all other allegations denied.

60.     Denied.

61.     The June 27, 2018 letter is admitted, which speaks for itself; all other allegations are denied.

62.     Round Hill's June 27, 2018 letter speaks for itself; all other allegations are denied.

63.     Denied.

64.     Admitted.

65.     Admitted.

66.     Admitted.

67.     Admitted.

68.     The July 2, 2018 letter speaks for itself.  All privileges are reserved and all other allegations are denied.

69.     Denied.

70.     Round Hill repeats the foregoing allegations as if expressly re-averred and set forth herein.

71.     Denied.

72.     Denied.

73.     Round Hill repeats the foregoing allegations as if expressly re-averred and set forth herein.

74.     Denied.

75.     Denied.

76.     Round Hill repeats the foregoing allegations as if expressly re-averred and set forth herein.

77.     Denied.

78.     Denied.

79.     Denied.

## FIRST AFFIRMATIVE DEFENSE

Round Hill has been discharged and released from all obligations under the APA and the

TSA in avoidance with APA Section 8.5(b), upon assignment to Sweethearts, who assumed the

obligations of the Purchaser under the APA and the TSA.

## SECOND AFFIRMATIVE DEFENSE

Sweethearts is a necessary party and, as such, the Complaint must be dismissed for

failure to join a necessary party under Bankruptcy Rule 7019 and Fed. R. Civ. P. Rule 19.

## THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff's claims which contradict the APA and the TSA, including the claims in

paragraphs 28, 29. 30 and 31 are barred by the Parol Evidence Rule.

## FIFTH AFFIRMATIVE DEFENSE

As the Plaintiff has been the first to commit a material breach, Plaintiff is not entitled to

enforce the contracts between the parties.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiff and/or his agents fraudulently induced Round Hill to purchase the assets of

NECCO.

## SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff is estopped by his acts and conduct and by the acts and conduct of his

agents from recovering damages from Round Hill.

### EIGHTH AFFIRMATIVE DEFENSE

The Plaintiff has waived his claims against Round Hill, by his acts and conduct, and by the acts and conduct of his agents.

### NINTH AFFIRMATIVE DEFENSE

The Plaintiff is barred from recovering by his and/or his agents' unclean hands.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiff and/or his agents have acted in bad faith or in a commercially unreasonable manner that has caused Round Hill harm such that it is entitled to an offset, set-off and/or recoupment against the claims asserted by the Plaintiff.

### ELEVENTH AFFIRMATIVE DEFENSE

There was a failure of consideration and the Plaintiff is not entitled to any recovery.

### TWELFTH AFFIRMATIVE DEFENSE

The APA does not contain an acceleration clause, and thus, Plaintiff has no claim for the three installments allegedly due after the commencement of this action.

### COUNTERCLAIM OF ROUND HILL INVESTMENTS LLC

The Plaintiff in Counterclaim Round Hill Investments LLC ("Round Hill") brings this counterclaim for damages arising from the breach by the Defendant Harold B. Murphy (the "Plaintiff" or "Murphy") in his capacity as Chapter 11 Trustee of New England Confectionery Company, Inc. (the "Debtor") of a certain Asset Purchase Agreement (the "APA") and Transition Services Agreement (the "TSA"), dated May 25, 2018.  Under the APA, the TSA and the Sale Order, Round Hill contracted to purchase substantially all of the Debtor's assets and to obtain certain transition services of the Debtor's employees in order to produce and sell candy under the Debtor's brands through at least November 30, 2018.   Round Hill, through its affiliate

Sweethearts, has paid the Plaintiff more than $16,000,000.00 for these assets, materials and

services, in accordance with the terms of the APA, TSA and Sale Order, based on express

representations and warranties that the Plaintiff assured Round Hill were true but were in fact

false.  As a result of the Plaintiff's breach of the parties' agreements, violation of the Sale Order,

misrepresentations, negligent misrepresentations and unfair or deceptive conduct, Round Hill has

been caused significant damages exceeding $2,000,000.00 as detailed below.

**PARTIES**

1.      The Plaintiff-in-Counterclaim Round Hill Investments LLC, for itself and its

designee, Sweethearts Candy Company LLC, is a Delaware limited liability company.

2.      The Plaintiff and Defendant-in-Counterclaim, Harold B. Murphy is the duly

appointed and acting Chapter 11 Trustee of the Debtor, New England Confectionery Company,

Inc., which has a principal place of business in Revere, Suffolk County, Massachusetts.

**FACTS RELEVANT TO ALL CLAIMS**

**A**.      **Pre-Sale Assurances and Representations to Induce Round Hill to Bid**

3.      On or about May 18, 2018, Round Hill submitted a qualifying bid for the

Plaintiff's planned Section 363 auction sale of the operating assets of the Debtor.

4.      After Round Hill had submitted its qualifying bid and just two (2) days before the

scheduled auction, the Plaintiff submitted a letter to Round Hill and all other bidders (the "May

21, 2018 Letter") informing Round Hill that there had been an FDA inspection in or about

November 2017 at the Debtor's facility and attaching a copy the FDA report on that inspection

and attaching a copy of a letter from the FDA dated May 16, 2018.  A copy of the May 21, 2018

Letter, without its attachments (the FDA letter and report), is attached hereto at **Exhibit 1**.

5.     In his May 21, 2018 Letter the Plaintiff identified numerous actions that the Debtor's management team had purportedly taken in response to the FDA report and expressly represented to Round Hill that the Debtor's management would submit a formal response to the FDA letter "on or before June 6, 2018."

6.     The Plaintiff further assured Round Hill that the "Debtor's management is confident that their remedial measures and the formal response will satisfactorily addresses all of the FDA's written concerns" (referred to herein as the "FDA Issues") See Exhibit 1.

7.     On or about May 22, 2018, Round Hill discussed the FDA Issues with the Debtor's management and the Plaintiff, at which time the Debtor informed and represented to Round Hill (and to the other bidders) that the FDA Issues had been satisfactorily resolved and cured.

8.     In particular, at least two conversations occurred between May 21 and May 23, 2018, among Tom Barnes, the chief executive officer of the Debtor, and another officer of the Debtor, Michael M. McGee, and representatives of Round Hill.  In both of those conversations Mr. Barnes and Mr. McGee, acting as agents of the Plaintiff, assured and represented to Round Hill's representatives, that the FDA Issues had been satisfactorily addressed and that the Debtor would continue to take any necessary steps to address those issues in the future.

9.     Round Hill understood from the Plaintiff's May 21, 2018 letter, and the express representations of his agents, the Debtor's management team, that all necessary corrective actions had been taken and that the FDA Issues would not be a problem with ongoing post sale operations as expressly contemplated under the proposed TSA.  Round Hill reasonably relied on these representations in finalizing its bid for the Debtor's assets.

10.     It was well known to the Plaintiff that a key predicate of Round Hill's bid, and the reason for the TSA (described below), was the understanding and agreement that upon closing of the acquisition by Round Hill (and its designee), the Debtor's facility would be in a condition to permit Round Hill's designee to immediately commence production of candy inventory, without qualification, in order to produce inventory for the Halloween season and to build up inventory for the transition to a new facility.

11.     The Plaintiff knew or should have known that Round Hill would not bid for the Debtor's assets, much less increase its qualifying bid, if it had known that the FDA Issues had not been cured and that the Debtor did not plan to cure them.

12.     In order to encourage and induce Round Hill to increase its bid, the Plaintiff and his agents repeatedly assured Round Hill that the Debtor would take care of the FDA Issues, including taking required post-closing cure procedures.

**B**.    **The May 23, 2018 Auction**

13.     As detailed in the transcript of the May 23, 2018 hearing, in his efforts to conduct a successful auction of the Debtor's assets, Plaintiff agreed, as approved by the Court, to provide substantial bonuses to the insider management team of the Debtor (who acted as Plaintiff's agents in his dealings with Round Hill), in order to encourage them to generate a successful sale.

14.     In reliance upon the assurances from the Plaintiff and of his insider and incentivized management team of the Debtor, and upon the understanding that the sale agreements required the Seller to warrant and cure any residual problems post-closing, Round Hill attended the May 23, 2018 auction and substantially increased its bid during the auction.

15.      Round Hill would never have increased its bid had it known the true state of the Debtor's affairs and had it known that the Plaintiff did not intend to cure the FDA Issues.

14

16.     Round Hill was the second highest bidder at the auction; Spangler was the winning bidder.

17.     On or after May 24, 2018, the Plaintiff informed Round Hill that Spangler had withdrawn its bid.  The Plaintiff withheld from Round Hill the reasons that Spangler withdrew its bid.

**C.     The Executed Sale Documents and Agreements**

18.     On May 25, 2018, Round Hill and the Plaintiff signed the APA, by which Round Hill or its designee was to purchase substantially all operating assets of the Debtor.

19.     Under the APA, the Debtor's obligation to rectify the FDA Issues constitutes an "Excluded Liability," as that term is defined in the APA, meaning that the obligation remains a liability of the Plaintiff under the express terms of the APA.

20.     In particular, Section 1.3(b) of the APA defines "Excluded Liabilities" as, *inter alia*, "any liability arising out of the Seller's, NECCO's and/or the estate's or their respective affiliate's violation of any Legal Requirement." [1]  Legal Requirement is defined at Section 3 as "all foreign, federal, state and local statutes, laws, ordinances… policies and guidelines…"

21.     In accordance with Section 1.3(b), "neither the Purchaser nor any of its Affiliates shall assume, be obligated to pay, perform or otherwise discharge or in any way be responsible for any Liabilities of the Seller, NECCO and/or the Estate…" other than the Assumed Liabilities (which term is defined in Section 1.3(a)).

22.     In other words, it was agreed under the APA that Round Hill has no obligation regarding the Excluded Liabilities.

---

[1] Seller and Plaintiff are used interchangeably in this Counterclaim.

23.     In Section 2.4 of the APA, the Plaintiff expressly represents and warrants  that "to the Seller's knowledge, Seller is, and has been for the past three (3) years, in compliance in all material respects with all Legal Requirements"  and that there were no "pending unresolved written notice of any Action….alleging any material noncompliance with any Legal Requirements."

24.     Additionally, Section 2.8 of the APA attaches Schedule 2.8, which lists all outstanding claims, all outstanding actions, arbitrations, suits, proceedings or pending investigations.  The FDA report and letter was listed on Schedule 2.8.  The APA makes it clear that the Plaintiff remained liable for all such "Excluded Liabilities." Additionally, Schedule 2.8 represents that unless otherwise set forth on Schedule 2.8, the matters disclosed on that Schedule "will be covered by the Seller's insurance policies."

25.     Also as part of the agreement bargained for by Round Hill, the Plaintiff represented and warranted to Round Hill, at Section 2.10 of the APA, that "[t]o the Seller's knowledge there is and will be no Liability attaching to the Purchaser or Purchased Assets as a result of any hazardous substance that may have been discharged on or released from any premises owned or operated by NECCO and/or the estate… or in connection with Purchased Assets, or disposed of on-site or off-site."

26.     Section 8.13 of the APA states that "…the disclosures in such schedules shall qualify only the corresponding sections and subsections contained in this Agreement, unless otherwise expressly provided herein."

27.     The APA expressly provides that Schedule 2.8 only qualifies Section 2.8 of the APA.  Thus, under Section 2.8 and the express terms of the APA, the disclosures in Schedule 2.8 do not qualify the representations and warranties in Section 2.4 and 2.10.

28.     The truth of the representations and warranties contained in the APA was reaffirmed by the Plaintiff at the closing and constituted conditions precedent to Round Hill's obligations, as specified in Section 5.1 of the APA.

29.     Also on May 25, 2018, Round Hill and the Plaintiff signed a Transition Services Agreement (the "TSA") pursuant to which Plaintiff agreed to comply with all applicable legal operating requirements, and to provide transition services through November 30, 2018.  The TSA was a material component of the acquisition as it was intended to allow Round Hill to immediately commence production of inventory at the facility.

30.     Pursuant to Section 1.1 of the TSA the Seller "agreed to provide those employees of the Seller necessary to assist in the production of inventory produced during the Transition Period."

31.     Section 1.2 of the TSA expressly provides that the "Seller will cause the Production Employees and the General Employees to perform their work…in compliance with applicable laws, rules and regulations."

32.     Section 4.1(a) of the TSA further provides that "[f]or the avoidance of doubt, any Production Employees shall remain employees of the Seller (and not of Buyer).  Buyer shall not be deemed to control the Seller's employees and the Buyer shall not be responsible for any expenses incurred in connection with the employment of such employees."

33.     The TSA also required, at Section 4.1(b), that the Plaintiff was to Round Hill with proof of liability insurance and proof of an endorsement adding Round Hill and Sweethearts to the policy as insureds.

34.     Also on May 25, 2018, the Plaintiff, Round Hill and the Plaintiff's landlord for the NECCO facility entered into a License Agreement, which permitted Round Hill to continue

17

NECCO's operations at the facility through November 30, 2018, conditioned on proof of insurance and insurance endorsements naming the landlord and its lender as insureds.  The License agreement was a material component of Round Hill's acquisition of the Debtor's assets.

35.     On May 29, 2018, the United States Bankruptcy Court entered the Sale Order (Docket No. 285) approving and authorizing the APA, the TSA and the sale to Round Hill or its designee.  The Sale Order is attached hereto and incorporated herein by reference as **Exhibit 2**.

36.     The Sale Order specifically states, at finding "W" that "[t]he Buyer shall have no obligations with respect to any liabilities of the Debtor or the Estate, including, without limitation, the liabilities of the Debtor or the Estate specifically excluded under the Purchase Agreement . . ." (i.e. the Plaintiff remained liable for the Excluded Liabilities).

37.     The Sale Order further specifically states, at Paragraph 7, as follows:

> The transition services agreement and the transactions contemplated thereby, are hereby approved.  Seller, on behalf of the Debtor and the estate, shall remain in compliance with all laws, rules and regulations governing the maintenance and operating of the facility, including, without limitation, the federal Food, Drug and Cosmetic Act and Title 21 of the Code of Federal Regulations, and shall perform or cause to be performed any corrective action that may be required thereunder.  For the avoidance of doubt, upon termination of the transition services agreement, no liability of the buyer shall accrue on or after the effective date of the termination.

38.     The APA, together with the Sale Order and the TSA, clearly require the Seller to be responsible for any further cure of the FDA Issues, or, for that matter, any other problems or issues with the facility.

**D.     The Closing and the Actions Inducing Round Hill to Close**

39.     The Plaintiff's sale of the Debtor's assets to Round Hill's affiliate closed on May 31, 2018.

40.     On the closing date Round Hill paid $16,330,000 to the Plaintiff, as adjusted and in accordance with the APA.

41.     In accordance with Section 5.1(l) of the APA, the Plaintiff delivered to Round Hill a Closing Certification dated May 31, 2018, whereby the Plaintiff certified that "All representations and warranties of Seller contained in the Agreement….were true and accurate as of the date when made and are true and accurate on the date hereof" and "seller has performed and complied with each and every covenant, agreement and condition required by the Agreement to be performed or complied with by him prior to or at the Closing (as defined in the Agreement)."  A copy of the Closing Certificate is attached hereto at **Exhibit 3**.

42.     On May 30, 2018, the day before the closing, the Debtor obtained a false insurance certificate, which Plaintiff's closing counsel submitted to Round Hill, certifying that both Round Hill and Sweethearts were added to the liability policy as additional insureds, to induce Round Hill to consummate the closing with the Plaintiff.  A copy of the false insurance certificate is attached hereto as **Exhibit 4**.

43.     On information and belief, the Plaintiff and his agents, knew or should have known that the insurance certificate was false, knew or should have known that the insurer had refused to add Round Hill and Sweethearts as additional insureds, and knew or should have known that the required insurance for the closing could not be delivered to Round Hill.

44.     Round Hill did not discover, until late July, 2018, that the insurance certificate was false and that neither Round Hill nor Sweethearts had been added to the Debtor's liability policy as additional insureds.  While Round Hill and Sweethearts were able, on their own initiative (incurring costs in the process), to thereafter obtain an endorsement adding Round Hill and Sweethearts as additional insureds, retroactive to the closing date, the false certificate caused

damages to Round Hill and, furthermore, Round Hill would not have closed had it known the truth that the insurance certificate was neither correct nor authorized by the insurance company.

45.     Round Hill and Sweethearts were further induced to purchase the Debtor's assets by the representations that the Plaintiff, pursuant to the TSA, would comply with the TSA requirement that all employees be maintained as employees of Plaintiff and not Round Hill or Sweethearts, and that Plaintiff would comply with all laws applicable to their employment, including the WARN Act.

46.     At the time of the closing Round Hill and Sweethearts relied on the Plaintiff's representations and warranties, which were expressly reaffirmed on the date of the closing, and that the FDA Issues had been cured or the Debtor would make sure they were cured, at no expense to Round Hill or Sweethearts.

47.     When Sweethearts closed with the Plaintiff, Sweethearts and Round Hill relied on the foregoing and further relied on the Plaintiff's assurances and express representations and warranties, which the Plaintiff reaffirmed as of the closing date, and as reflected in the Closing Certification, that any environmental issues or Legal Requirements of the EPA had been complied with and/or fully addressed by the Debtor and that the required insurance coverage had been obtained.

**E.  The Post-Closing Revelations**

48.     After the May 31, 2018 closing, Round Hill and Sweethearts discovered that the FDA Issues had not been fully addressed by the Plaintiff or his management team.

49.     As such, while the post-closing facility was able to engage in limited production of product inventory, Sweethearts was unable to conduct the planned full scale ramp up and inventory buildup that was an important component of its business plan.

50.     Furthermore while the May 21, 2018 Letter assured Round Hill that the Debtor would make its "formal response" to the FDA by June 6, 2018, that formal response was, upon information and belief, not made by the Debtor.

51.     After the closing Round Hill and Sweethearts also discovered that NECCO was in the middle of a compliance order process with the Environmental Protection Agency (the "EPA"), and shortly after the closing, the EPA notified them that the Debtor's facility was not in compliance with a prior EPA Order, causing them further expense and effort to address the undisclosed pre-existing EPA issue (the "EPA Issue").

52.     The failure to address the EPA Issue is contrary to the Plaintiff's express representations and warranties including, but not limited to, Sections 2.4 and 2.10 of the APA.

53.     After the closing Round Hill and Sweethearts also discovered, in late July 2018, that the insurance certificate was not valid and that Round Hill and Sweethearts had not been added as insureds.  Sweethearts would not have closed had it known the truth about the false insurance certificate.

54.     Also in late July, contrary to statements by Plaintiff in a July 13 meeting with a representative of Round Hill and Sweethearts, they discovered that the Plaintiff considered the WARN Act notice to be ineffective and that employees were claiming that Plaintiff had not complied with the WARN Act, when Round Hill and Sweethearts were sued under the WARN Act by two former employees of the Plaintiff.

55.     The Plaintiff is obligated, under the TSA and the APA, as well as the Sale Order, for any WARN Act liability and is obligated to indemnify Round Hill and Sweethearts from any litigation or other loss, including attorneys' fees.

**F.  Round Hill and Sweethearts have Suffered Harm as a Result of the Actions and Conduct of the Plaintiff and his Agents**

56.     Round Hill and Sweethearts have incurred substantial damages, including, *inter alia*, costs incurred in connection with the unsuccessful remediation efforts and plant shutdowns, any other expenditures related to the FDA Issues, and economic losses resulting from the fact that the value of the assets purchased from the Plaintiff are substantially less, due to the misrepresentations and breach of contract, than had been bargained for by Round Hill and agreed to by the Plaintiff.

57.     On information and belief, these damages are in excess of $1,000,000.00 for the cost to close the facility due to the FDA Issues, and in excess of an additional $1,000,000.00 because the assets purchased by Round Hill are worth substantially less than would have been if the Plaintiff had complied with his end of the bargain.

58.     Round Hill and Sweethearts have also lost the benefit of their bargain and have sustained lost profits as a result of the actions of Plaintiff and his agents.

### COUNT I
(Breach of the APA)

59.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 58 above, as if set forth specifically herein.

60.     The Plaintiff breached the APA by breaching the representations and warranties, and conditions precedent at Sections 2.4, 2.10 and 5.1 of the APA.

61.     The APA specifies, at Section 6.2, that the Plaintiff is obligated to indemnify and hold Round Hill harmless from, inter alia, "(i) any breach or violation of the representations or warranties of the Seller set forth [in the Agreement] or in any certificate or document delivered pursuant to [the] Agreement; (ii) any breach or violation of the covenants or agreements of Seller

set forth in [the] Agreement; (iii) the Excluded Liabilities; (iv) any other obligations or

Liabilities of Seller as may be detailed in the TSA or a breach by Seller of the TSA."

62.     The Plaintiff has breached the indemnity obligations in the APA, and Round Hill

is entitled to indemnification, *inter alia*, for the FDA Issues; the EPA Issue; the WARN Act

litigation; the false insurance certificate; and the Plaintiff's breaches of the APA and the TSA.

63.     Under Sections 6.4 and 6.5 of the APA, any unpaid obligation of the Plaintiff to

Round Hill may be used as a set off against any residual obligations of Round Hill or as an

adjustment to the purchase price.

64.     The Plaintiff and Round Hill also agreed, in accordance with the APA, to certain

additional closing adjustments.   Round Hill is entitled to certain adjustments that are not yet

finalized, amounting to approximately $200,000.00.

65.     Round Hill and Sweethearts have been damaged by the Plaintiff's breaches of the

APA and have suffered substantial damages, in excess of $2,000,000.00.

66.     Round Hill's and Sweetheart's damages include, but are not necessarily limited

to, additional post-closing set offs that have not yet been resolved; all costs and expenses related

to the unsuccessful efforts to remediate and cure the FDA Issues; all costs and expenses related

to the false insurance certificate and any other breaches of the TSA; the costs of the shutdown of

the Debtor's facility; all costs and expenses for the WARN Act litigation; the payments by

Sweethearts pursuant to the TSA; the difference between the value of the Debtor's assets and

services as promised and warranted and the value of the assets actually received; lost benefit of

the bargain and lost profits, plus other out-of-pocket costs and attorneys' fees, for which the

Plaintiff is obligated under Section 6.2 of the APA.

## COUNT II
(Breach of Transition Services Agreement)

67.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 66 above, as if set forth specifically herein.

68.     The TSA specifies that the Plaintiff agreed to provide certain transition services to Round Hill during the "Transition Period" from the date of closing through November 30, 2018.

69.     The TSA was a material component of Round Hill's agreement to acquire the Debtor's assets, and it was important that Round Hill be able to produce candy inventory for the upcoming Halloween season, and to immediately ramp up production of inventory to generate sufficient inventory to carry operations over the upcoming change of locations.

70.     The Plaintiff has breached the TSA by failing to cause his employees to perform their work "in compliance with applicable laws, rules and regulations" as expressly agreed.

71.     The Plaintiff has further breached the TSA and Round Hill is entitled to indemnification for any WARN Act claim against Round Hill.

72.     The Plaintiff's breach of the TSA has caused substantial damages to Round Hill and Sweethearts, including the damages described above and including loss of sales due to inability to produce inventory.  Additionally, the APA provides, as alleged in Count I above, for indemnification of Round Hill for all breaches by the Plaintiff of the TSA.

## COUNT III
(Violation of the Court's Sale Order of May 29, 2018)

73.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 72 above, as if set forth specifically herein.

74.     The Sale Order confirmed, approved and authorized the APA and the TSA.

24

75.     By failing to remediate and cure all of the FDA Issues and EPA Issue the Plaintiff has violated finding W and Paragraph 7 of the Sale Order.

76.     The TSA and Paragraph 12 of the Sale Order require the Plaintiff to maintain all of the Debtor's employees as employees of the Plaintiff, and to be responsible for all employee-employer obligation to those employees.

77.     To the extent that it is contended that the Debtor's WARN Act Notice is ineffective, the Plaintiff violated the Sale Order.

78.     Round Hill and Sweethearts have been damaged, as aforesaid, by the Plaintiff's violation of the Sale Order.

## COUNT IV
(Misrepresentation)

79.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 78 above, as if set forth specifically herein.

80.     The Plaintiff and/or his agents made misrepresentations of material fact, as detailed above, in order to induce Round Hill to buy the purchased assets and to increase its offer for the purchased assets; Round Hill reasonably relied on said misrepresentations; and Round Hill was substantially damaged, as aforesaid.

81.     Having informed Round Hill and other potential bidders of the FDA report and the FDA letter, and having informed Round Hill that the FDA Issues had been and were capable of full remediation, , the Plaintiff had a duty to disclose all other relevant information. Nonetheless, the Plaintiff failed to disclose highly relevant and necessary information in order for Round Hill to evaluate the Plaintiff's representations concerning the FDA Issues.

82.     Where the Plaintiff and/or his agents made representations that the insurance certificate, Exhibit 4, was valid and effective, and failed to disclose that it was false and fraudulent, when his insider agents knew or should have known that the certificate was false, the Plaintiff and his agents were obligated to disclose all other information related to those matters (i.e. the information that the insurance certificate was false), but failed to disclose that relevant and necessary information to Round Hill.

83.     Plaintiff is liable to Round Hill and Sweethearts for all damages, which are substantial, as aforesaid, caused by all misrepresentations and failures to disclose.

## COUNT V
### (Negligent Misrepresentation)

84.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 83 above, as if set forth specifically herein.

85.     In the alternative, to the extent that the statements of the Plaintiff and his agents were not intentional misrepresentations, those statements were negligent misrepresentations, since the Plaintiff and/or his agents, the Debtor's insider management, either knew or should have known that the FDA Issues had not been fully addressed, that the EPA Issue had not been fully addressed and that the insurance certificate was false.

86.     Round Hill reasonably relied on those representations when it decided to bid on the Debtor's assets, negotiate the APA and the TSA, and close on the transactions.

87.     The Plaintiff is liable to Round Hill and Sweethearts for the damages, as aforesaid, caused by all negligent misrepresentations.

## COUNT VI
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

88.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 87 above, as if set forth specifically herein.

89.     Each of the contracts and agreements entered into by and between the Plaintiff and Round Hill contain an implied covenant of good faith and fair dealing.

90.     By his various actions and inactions, and the actions and inactions of his agents, including their misrepresentations and negligent misrepresentations, the Plaintiff has beached the implied covenant of good faith and fair dealing contained in all of the contracts and agreements, specifically, the APA and the TSA.

91.     The actions of the Plaintiff have caused monetary damages to Round Hill.

92.     The Plaintiff is liable to Round Hill and Sweethearts for all damages caused by his and his agents' breach of the implied covenant of good faith and fair dealing contained in the contracts executed and delivered by the Plaintiff to Round Hill.

## COUNT VII
### (Unjust Enrichment)

93.     Round Hill re-avers, re-alleges and incorporates herein by reference the allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1 through 92 above, as if set forth specifically herein.

94.     The Plaintiff has received significant sums of money from Round Hill and Sweethearts under, among other documents, the APA and TSA.

95.     As detailed above, Plaintiff has acted inequitably and improperly, including by making false and misleading representations, breaching the APA, the TSA, and the Sale Order,

and inducing Round Hill and Sweethearts to invest over $16 million in a business that Plaintiff

either knew or should have known was at risk of being shut down as a result of the FDA Issues.

96.     Round Hill did not receive commensurate value for the amounts paid to the

Plaintiff and, in fact, has suffered damages as a result of the actions of the Plaintiff.

97.     As a result, the Plaintiff has been unjustly enriched to the detriment of Round Hill

and Sweethearts and is liable to Round Hill and Sweethearts for all damages incurred.

## COUNT VIII
(Violations of M.G.L. c. 93A)

98.     Round Hill re-avers, re-alleges and incorporates herein by reference the

allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1

through 97 above, as if set forth specifically herein.

99.     As Plaintiff operating the Debtor's business, the Plaintiff is obligated by 28

U.S.C.A. §959 to comply with all laws applicable in the states in which the business operates,

including, in this case, M.G.L. c. 93A.

100.     The foregoing acts, practices, representations, nondisclosures, and violation of the

Court's Sale Order, are unfair and deceptive acts or practices, employed by the Plaintiff in the

conduct of a trade or commerce, which are in violation of c. 93A, §§ 2 and 11.

101.     Round Hill and Sweethearts have incurred substantial damages, as aforesaid, as

well as lost profits and consequential damages, due to the Plaintiff's unfair or deceptive acts and

practices.

102.     If and to the extent that said unfair or deceptive practices were knowing or

intentional, Round Hill and Sweethearts are entitled to double or treble damages.

## COUNT IX
(Declaratory Judgment)

103.     Round Hill re-avers, re-alleges and incorporates herein by reference the

allegations contained in the foregoing Answer and Affirmative Defenses, and in Paragraphs 1

through 102 above, as if set forth specifically herein.

104.     A case or controversy exists between the parties on the following issues:

(a)     whether and the extent to which Round Hill and Sweethearts are entitled

to set off against or to an adjustment of the remaining payments due from Round Hill

under the Asset Purchase Agreement, in accordance with Sections 6.4 and/or 6.5 of that

Agreement.

(b)     Whether the Plaintiff is entitled to accelerate all of the four post-closing

Purchase Price payments due under the Asset Purchase Agreement.

**WHEREFORE,** the Defendant Round Hill Investments LLC respectfully requests this

Court to enter the following relief:

1.     That the Court enter judgment under Count I of the Counterclaim awarding to

Round Hill all damages and indemnity to which Round Hill is entitled due to the Plaintiff's

breach of the Asset Purchase Agreement, plus interest and attorneys' fees.

2.     That the Court enter judgment under Count II of the Counterclaim awarding to

Round Hill all damages to which Round Hill is entitled due to the Plaintiff's breach of the TSA.

3.     That the Court enter judgment under Count III of the Counterclaim awarding to

Round Hill all damages to which Round Hill is entitled due to the Plaintiff's violation of the Sale

Order.

4.      That the Court enter judgment under Count IV of the Counterclaim awarding to Round Hill all damages to which Round Hill is entitled due to the Plaintiff's misrepresentations to Round Hill.

5.      That the Court enter judgment under Count V of the Counterclaim awarding to Round Hill all damages to which Round Hill is entitled due to the Plaintiff's negligent misrepresentations to Round Hill.

6.      That this Court enter an appropriate decree under Count VI of the Counterclaim, awarding Round Hill all damages to which Round Hill is entitled to the Plaintiff's breach of the implied covenant of good faith and fair dealing.

7.      That this Court enter an appropriate decree under Count VII of the Counterclaim, awarding Round Hill all damages to which Round Hill is entitled to the Plaintiff's unjust enrichment.

8.      That the Court enter judgment under Count VIII of the Counterclaim awarding to Round Hill all damages to which Round Hill is entitled due to Plaintiff's unfair and deceptive acts and practices, plus attorneys' fees, and that the court double or treble the award if and to the extent to which the Court finds said acts or practices to be intentionally unfair or deceptive.

9.      That this Court declare, as requested in Count IX, the parties' set off, adjustment and acceleration rights and obligations under the Asset Purchase Agreement.

10.    For such other and further relief as the Court shall find to be just and proper.

Respectfully submitted,

ROUND HILL INVESTMENTS LLC

By its Attorneys
RIEMER & BRAUNSTEIN LLP


*/s/ Paul S. Samson*
Paul S. Samson, BBO #440160
Alan L. Braunstein, BBO #546042
1 Center Plaza
Boston, Massachusetts 02108
psamson@riemerlaw.com
(617) 880-3555
abraunstein@riemerlaw.com
(617) 880-3516

DATED:  August 8, 2018

## CERTIFICATE OF SERVICE

I, Paul S. Samson, hereby certify that the foregoing *ANSWER AND COUNTERCLAIM OF DEFENDANT ROUND HILL INVESTMENTS LLC* filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated and non-registered participants, if any, on August 8, 2018.

*/s/ Paul S. Samson*
Paul S. Samson

2355315.1